**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
ARTURO J. MARTINICH,

                Plaintiff,

        -against-

EUGENE WARD, COUNTY OF NASSAU, JOHN
HARVEY, JOSEPH M. GIACONE, FRANK M.
WOLFER, RHUBENS F. TOUSSAINT, CLIFFORD J.
O'BRIEN, JOHN MARCANTONATOS, LORRAINE
BROWN, HONORABLE KATHLEEN M. RICE,

                Defendant(s).
---------------------------------------------------------X

**MEMORANDUM OF**
**DECISION & ORDER**
14–cv–07227 (ADS) (ARL)

**APPEARANCES:**

**Law Office of Harry H. Kutner, Jr.**
*Attorney for the Plaintiff*
136 Willis Avenue
Mineola, NY 11501
      By:    Harry H. Kutner, Jr., Esq., Of Counsel

**Eugene Ward**
*Pro Se Defendant*

**Nassau County Attorney's Office**
*Attorneys for the Defendants County of Nassau, John Harvey, Joseph M. Giacone, Frank M.*
*Wolfer, Rhubens F. Toussaint, Clifford J. O'Brien, John Marcantonatos, Lorraine Brown,*
*Honorable Kathleen M. Rice*
One West Street
Mineola, NY 11501
      By:    Diane C. Petillo, Deputy County Attorney
               Liora M. Ben-Sorek, Deputy County Attorney

**SPATT, District Judge**:

On December 11, 2014, Plaintiff Arturo J. Martinich (the "Plaintiff) commenced this civil

rights action under 42 U.S.C. § 1983 (Section 1983) against two discrete sets of Defendants,

namely: 1) the Defendant Eugene Ward (the "Defendant Ward"), who was the Plaintiff's neighbor

during the relevant period; and 2) the "County Defendants:" Defendant John Harvey ("Defendant

1

Harvey"), Defendant Joseph M. Giacone ("Defendant Giacone"), Defendant Frank Wolfer ("Defendant Wolfer"), Defendant Rhubens F. Toussaint ("Defendant Toussaint"), the Defendant Clifford O'Brien ("Defendant O'Brien"), the Defendant John Marcantonatos ("Defendant Marcantonatos"), the Defendant Lorraine Brown ("Defendant Brown"), and the Defendant Kathleen Rice ("Defendant Rice") (collectively, the "Individual County Defendants"), and the Defendant Nassau County (the "Defendant County"). The Plaintiff alleges that Defendant Ward and the Individual County Defendants violated his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights by falsely arresting him, and that the violation was the result of a policy, custom and/or practice of the Defendant County.

Presently before the Court is a motion by the County Defendants pursuant to Federal Rule of Civil Procedure ("FED. R. CIV. P." or "Rule") 12(c) for a judgment on the pleadings dismissing all claims against them. The Plaintiff responded by cross-moving to amend his complaint pursuant to Rule 15. The Court, having reviewed both motions, scrutinizes the Plaintiff's complaint under the standard for Rule 12(b)(6) in light of the proposed amendments, and for the reasons that follow, grants the County Defendants' motion in its entirety.

## I. BACKGROUND

Before turning to the facts, the Court will examine the procedural history and explain how it will determine the relevant facts in light of the Plaintiff's motion to amend.

### A. Relevant Procedural History

The Plaintiff commenced this suit against the Defendants by filing a complaint on December 11, 2014. The complaint sets forth eight causes of action. The Plaintiff alleged that the Individual County Defendants and the Defendant Ward violated Section 1983 by falsely arresting him and depriving him of his First, Fourth, Fifth, Sixth and Fourteenth Amendment rights. The

Individual County Defendants were sued in their official and individual capacities. The Plaintiff alleged that the constitutional violations perpetrated by the Individual County Defendants were the result of a custom, policy or practice of the Defendant County, and that the Defendant County was therefore also in violation of Section 1983 pursuant to the *Monell* doctrine. The remaining claims were pendent state law claims against the Defendant Ward and the Individual County Defendants for false arrest, false imprisonment, intentional infliction of emotional distress, malicious prosecution, abuse of process, and conspiracy.

The Defendant Ward filed an answer on January 14, 2015. The County Defendants and the Defendant County filed an answer on March 24, 2015, and filed an amended answer as a matter of right the next day, in which they included a cross-claim against the Defendant Ward.

The County Defendants filed a motion to dismiss pursuant to Rule 12(c) on April 22, 2016. The County Defendants moved to dismiss: the Plaintiff's *Monell* claim; the claims against the County Defendants in their official capacities; all claims against Defendant Rice; all claims against the County Defendants who were police officers; the conspiracy claim; and the pendent state law claims against the County Defendants.

On October 18, 2016, the Plaintiff filed his memorandum in opposition as well as a cross–motion to amend/correct/supplement the complaint pursuant to Rule 15. The Plaintiff agreed with the County Defendants that the following claims should be dismissed: all claims against the Individual County Defendants in their official capacities; all claims against Defendant Rice; the conspiracy claim; and all pendent state law claims against the Individual County Defendants. The Plantiff's motion to amend asked the Court for leave to add factual allegations to his *Monell* claim. None of the Defendants served a reply memorandum of law in response to the Plaintiff's memorandum in opposition, and none of the Defendants have served a memorandum in opposition

to the Plaintiff's cross-motion to amend. Therefore, the Court only needs to rule on the sufficiency of the pleadings regarding the Plaintiff's Section 1983 claim against the Individual County Defendants who are police officers, and the *Monell* claim against the Defendant County. The remaining portions of the County Defendants' motion are rendered moot by the Plaintiff's voluntary dismissal of those claims.

### 1. As to the Plaintiff's Motion to Amend his Complaint to Add Factual Information

The Plaintiff moved to amend his complaint in response to the County Defendants' motion for a judgment on the pleadings. Therefore, the Court "has a variety of ways in which it may deal with the pending motion to dismiss, from denying the motion to dismiss as moot to considering the merits of the motion in light of the amended complaint." *MB v. Islip Sch. Dist.*, No. 14-cv-4670, 2015 WL 3756875, at *4 (E.D.N.Y. June 16, 2015) (quoting *Schwartzco Enters. LLC v. TMH Mgmt., LLC,* No. 14–cv–1082, 2014 WL 6390299, at *1 (E.D.N.Y. Nov. 17, 2014) (internal quotation marks omitted).

The Plaintiff does not seek to add new claims or new defendants. He merely seeks to supplement the factual information that was contained in the original complaint. As the County Defendants had sufficient opportunity to respond to the Plaintiff's cross-motion to amend but chose not to, the Court will consider the merits of the County Defendants' motion in light of the proposed supplemental facts. *See MB*, 2015 WL 3756875, at *4 ("[T]he merits of the motion to dismiss will be considered in light of the proposed [amended complaint].")*; Costello v. Town of Huntington,* No. 14–cv–2061, 2015 WL 1396448, at *1 (E.D.N.Y. Mar. 25, 2015) (same); S*chwartzco Enterprises LLC,* 2014 WL 6390299, at *2 (same).

Under Rule 15, a Plaintiff seeking to amend his complaint must submit a proposed amended complaint as an exhibit to his motion. *See Segatt v. GSI Holding Corp.,* 07-cv-11413,

2008 WL 4865033, at *4 (S.D.N.Y. Nov. 3, 2008). In support of his motion to amend, Plaintiff's counsel filed a thirteen-page affirmation replete with factual assertions and arguments, a seventeen-page memorandum of law, ten "factual" exhibits and four "procedural exhibits." The Court notes that its page limit for motions is twenty-five pages and will not permit any future attempts to evade such limitations without asking leave of the Court to exceed the page limit. Nowhere among these numerous exhibits and papers was there a proposed amended complaint. Also, the Court notes that the memorandum of law includes many factual assertions that were not in the original complaint.

"Usually, a movant's failure to submit a proposed amended complaint constitutes sufficient grounds to deny a motion to amend." *Christian v. Town of Riga*, 649 F. Supp. 2d 84, 100 (W.D.N.Y. 2009) (citing *Murray v. N.Y.*, 604 F. Supp. 2d 581, 588 (W.D.N.Y. 2009)); *see also La Barbera v. Ferran Enterprises, Inc.,* No. 06–cv–2678, 2009 WL 367611, at *3 (E.D.N.Y. Feb. 10, 2009) ("In order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and the opposing party can understand the exact changes sought") (internal citations and quotation marks omitted); *Team Air Express, Inc. v. A. Heffco Technologies, Inc.,* No. 06–cv–2742, 2008 WL 3165892, at *10 n. 10 (E.D.N.Y. Aug. 6, 2008) (stating that "the Court could recommend denial of the motion [for leave to amend] solely on the basis of plaintiff's failure to submit a proposed amended Complaint," but denying the motion on the merits, as futile); *Zito v. Leasecomm Corp.,* No. 02–cv–8072, 2004 WL 2211650, at *25 (S.D.N.Y. Sept. 30, 2004) ("In order to meet the requirements of particularity in a motion to amend, 'a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought.'") (quoting *Smith v. Planas,* 151 F.R.D. 547, 550 (S.D.N.Y. 1993)).

"If the movant's papers adequately explain the basis for, and nature of, the proposed amendment, however, the failure to attach a proposed amended complaint to the motion is not necessarily fatal." *Murray*, 604 F. Supp. 2d at 588 (citing *Segatt v. GSI Holding Corp.,* 07 Civ. 11413, 2008 WL 4865033, at *4, (S.D.N.Y. Nov. 3, 2008)).

Therefore, because the Plaintiff's memorandum adequately explains the basis for his amendment, and includes the proposed factual additions, the Court finds that the Plaintiff's failure to include a proposed amended complaint is not fatal and will consider the facts included in the Plaintiff's memorandum of law.

Furthermore, as it appears that the Plaintiff incorporated several exhibits in his memorandum of law, the Court will also consider the exhibits as additional facts proposed by the Plaintiff. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.,* 62 F.3d 69, 72 (2d Cir. 1995) (*per curiam*) ("the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (quoting *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991)); FED. R. CIV. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal citations and quotations omitted).

The Court notes that it is not converting the County Defendants' motion for a judgment on the pleadings into a motion for summary judgment by taking notice of the Plaintiff's exhibits. The exhibits were provided by the Plaintiff in support of his motion to amend, and the exhibits were incorporated into what the Court has deemed his proposed amended complaint. Furthermore,

when deciding a motion for a judgment on the pleadings, the court may look outside the complaint to consider documents that are incorporated in the complaint by reference and matters of which judicial notice may be taken. *Chambers*, 282 F.3d at 153.

The Court will construe the factual allegations in the memorandum of law as those that would have been included in a proposed amended complaint, and will include the relevant facts in the memorandum of law and the exhibits incorporated by reference.

## B. The Relevant Facts

The following facts are drawn from the initial complaint; the Plaintiff's memorandum of law in opposition to the County Defendants' motion for a judgment on the pleadings and in support of his cross-motion to amend; and the exhibits incorporated in the Plaintiff's memorandum and attached thereto. They are assumed to be true for the purposes of this motion.

The Plaintiff and the Defendant Ward were neighbors. The Plaintiff alleges that the Defendant Ward had repeatedly vandalized his property. Namely, that the Defendant Ward continually cut the Plaintiff's grass too short with a weedwacker, which caused the Plaintiff's grass to die. The Plaintiff had complained repeatedly to the Defendant Ward about the alleged vandalism. On May 21, 2013, the Plaintiff alleges that the Defendant Ward once again vandalized his property, and when the Plaintiff complained to him, the Defendant Ward attacked him by knocking him to the ground, beating him with his feet, fists and a weapon, and then proceeded to choke him and stomp him.

The Plaintiff called the police to file a complaint and have the Defendant Ward arrested. The Defendants Harvey, Giacone, Wolfer, Toussaint, O'Brien, Marcantonatos and Brown (the "NCPD Defendants"), all members of the Nassau County Police Department, responded to the Plaintiff's call. The Plaintiff alleges that the Defendant Ward then made a false complaint to the

NCPD Defendants when he complained that the Plaintiff had hit him with a weedwacker. The NCPD Defendants arrested the Plaintiff and did not arrest Defendant Ward. The Plaintiff alleges that he had visible injuries and that the Defendant Ward did not have any injuries. The Plaintiff included several photos of his alleged injuries. (Pl.'s Ex. 1).

Nevertheless, the criminal complaint against the Plaintiff alleges that the Defendant Ward suffered an abrasion, swollen lips, and substantial pain, and was taken to Franklin Hospital for emergency care. (*See* Pl.'s Ex. 2). The Defendant Ward and the Plaintiff both wrote statements. The Plaintiff told the police that the Defendant Ward beat him with his fists and that he hit him back with his fists and feet, and the Defendant Ward said that the Plaintiff beat him with the weedwacker. (*See* Pl.'s Exs. 2–4). The Defendant Ward's statement says that he called 911.

The Plaintiff is a Peruvian-American, and the Defendant Ward is "white." The Plaintiff was charged with assault in the second degree and criminal possession of a weapon in the fourth degree. The Plaintiff was processed and arraigned on the criminal complaint. The Plaintiff further alleges that the Defendant Rice and her assistant prosecutors "attempt[ed] to scare plaintiff into pleading guilty." (Compl. at ¶ 42). The complaint does not state what bail was set or how long the Plaintiff was detained. The Plaintiff alleges that the Defendant Ward's complaint was false and that the County Defendants should have known that it was false.

On October 14, 2014, the criminal charges against the Plaintiff were dismissed. It is not clear from the complaint whether the Defendant Ward was ever arrested or charged, only that he was not arrested on May 21, 2013.

### 1. The Alleged Facts Relating to the Plaintiff's *Monell* Claim

In support of his *Monell* claim, the Plaintiff lists ten incidents relating to ten different police officers, none of whom are charged in this case. Of the ten officers that the Plaintiff lists as

examples to support his *Monell* claim, three are alleged to have fabricated the probable cause for arrests. Of those three, two were prosecuted, and one was neither prosecuted nor disciplined. The other seven incidents include: the alleged beating of a civilian by an officer who was criminally charged and "cleared"; the omission of an arrest from applications filed with the New York City Police Department (the "NYPD") and Nassau County Sherriff's Department (the "NCSD") and the beating of four individuals by an NCSD police officer without censure by the NCSD; the shooting of an unarmed civilian by a police officer who was fired (the complaint does not state whether the officer was prosecuted); an officer who had an affair and was disciplined and prosecuted; the menacing of a bartender by a police officer who was prosecuted but not disciplined; the shooting of an individual who the police said was armed but who the Defendant County paid the decedent's estate in a settlement; and the shooting of a hostage where the officer was not disciplined.

## II. DISCUSSION

### A. The Legal Standard

FED. R. CIV. P. 15(a)(2) applies to motions to amend the pleadings once the time for amending a pleading as a matter of right has expired. It states, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Courts have construed the rule liberally and have said that "the purpose of Rule 15 is to allow a party to correct an error that might otherwise prevent the court from hearing the merits of the claim." *Safety-Kleen Sys., Inc. v. Silogram Lubricants Corp.*, No. 12–cv–4849, 2013 WL 6795963, at *2 (E.D.N.Y. Dec. 23, 2013) (quoting *Chapman v. YMCA of Greater Buffalo*, 161 F.R.D. 21, 24 (W.D.N.Y. 1995)); *see also Williams v.*

*Citigroup Inc.*, 659 F.3d 208, 212–13 (2d Cir. 2011) (finding a "strong preference for resolving disputes on the merits").

A court should deny leave to amend "in instances of futility, undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or undue prejudice to the nonmoving party." *Burch v. Pioneer Credit Recovery, Inc.,* 551 F.3d 122, 126 (2d Cir. 2008) (*per curiam*).

"The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial." *Fariello v. Campbell*, 860 F. Supp. 54, 70 (E.D.N.Y. 1994); *see also European Cmty. v. RJR Nabisco, Inc.*, 150 F. Supp. 2d 456, 502–03 (E.D.N.Y. 2001); *Saxholm AS v. Dynal, Inc.*, 938 F. Supp. 120, 123 (E.D.N.Y. 1996). The opposing party likewise bears the burden of establishing that an amendment would be futile. *See Blaskiewicz v. County of Suffolk*, 29 F. Supp. 2d 134, 137–38 (E.D.N.Y. 1998) (citing *Harrison v. NBD Inc.*, 990 F. Supp. 179, 185 (E.D.N.Y. 1998)).

The County Defendants moved for a judgment on the pleadings. The standard for a Rule 12(c) motion is the same for a motion to dismiss a complaint pursuant to Rule 12(b)(6), *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998), which is the standard for determining whether proposed amendments are futile. *IBEW Local Union No. 58 Pension Trust Fund & Annuity Fund v. Royal Bank of Scotland Grp., PLC*, 783 F.3d 383, 389 (2d Cir. 2015).

Under the *Bell Atlantic v. Twombly* standard, a complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face." 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929 (2007). The Second Circuit has explained that, after *Twombly,* the Court's inquiry under Rule 12(b)(6) is guided by two principles:

First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (internal quotation marks and alterations omitted)).

Accordingly, the Court will analyze the remaining claims which the County Defendants have moved to dismiss in light of the proposed supplemental facts and will scrutinize them under the standard for Rule 12(b)(6). As the County Defendants have not opposed the Plaintiff's cross-motion to amend, the Court will deem their silence as an admission that the motion is neither made in bad faith nor is it unduly prejudicial to them.

**B. As to the Plaintiff's 1983 False Arrest Claim Against the NCPD Defendants**

The County Defendants argue that the NCPD Defendants are entitled to qualified immunity because they reasonably believed that they had probable cause to arrest the Plaintiff when they arrested him. The Plaintiff argues that a question of fact remains as to whether the officers were objectively reasonable. The Court finds that the NCPD Defendants had probable cause to arrest the Plaintiff, and therefore have a complete defense to the Plaintiff's Section 1983 claim.

"A section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law." *Jenkins v. City of N.Y.*, 478 F.3d 76, 84 (2d Cir. 2007) (quoting *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir. 1996)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under § 1983." *Weyant*, 101 F.3d at 852 (internal citations omitted). It is also a complete defense to a constitutional claim for false imprisonment. *Betts v. Shearman*, 751 F.3d

78, 82 (2d Cir. 2014). "Probable cause exists when the arresting officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Mitchell v. City of N.Y.*, 841 F.3d 72, 77 (2d Cir. 2016) (quoting *Jenkins*, 478 F.3d at 84–85).

Even if there was not probable cause, a police officer is entitled to qualified immunity if they had arguable probable cause to arrest a plaintiff in a false arrest suit. *Garcia v. Does*, 779 F.3d 84, 92 (2d Cir. 2015) (quoting *Zalaski v. City of Hartford,* 723 F.3d 382, 390 (2d Cir. 2013) (internal quotation marks omitted)). Qualified immunity is not a defense to liability, but rather immunity from suit. *Pearson v. Callahan*, 555 U.S. 223, 237, 129 S. Ct. 808, 818, 172 L. Ed. 2d 565 (2009). The NCPD Defendants have the burden of establishing qualified immunity. *Garcia*, 779 F.3d at 92; *Vincent v. Yelich,* 718 F.3d 157, 166 (2d Cir. 2013); *see also Tellier v. Fields*, 280 F.3d 69, 84 (2d Cir. 2000) ("Because qualified immunity is an affirmative defense, . . . the defendants bear the burden of showing that the challenged act was objectively reasonable in light of the law existing at the time.").

Probable cause arguably existed if either 1) the officer possessed a reasonable objective belief that it was present, or 2) reasonably competent officers could disagree on whether there was probable cause. *Garcia*, 779 F.3d at 92; *Zalaski*, 723 F.3d at 390. "In deciding whether an officer's conduct was objectively reasonable . . ., we look to the information possessed by the officer at the time of the arrest, but we do not consider the subjective intent, motives, or beliefs of the officer." *Amore v. Novarro,* 624 F.3d 522, 536 (2d Cir. 2010) (internal quotation marks omitted). "[Q]ualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix v. Luna*, -- U.S. --, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting

*Malley*, 475 U.S. at 341, 106 S.Ct. 1092); *see also Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002) (stating that "in situations where an officer may have reasonably but mistakenly concluded that probable cause existed, the officer is nonetheless entitled to qualified immunity.") (citations omitted)..

Here, the Plaintiff alleges that the officers violated his Fourth, Fifth, Sixth and Sixteenth amendment rights by falsely arresting him and falsely imprisoning him.

The Plaintiff states in his complaint that the Defendant Ward told the NCPD Defendants that the Plaintiff had assaulted him. In his memorandum of law in support of his motion to amend, the Plaintiff clarifies that the Defendant Ward told the NCPD Defendants that the Plaintiff had hit him with a weedwacker. The criminal complaint which details the charges against the Plaintiff, incorporated into the Plaintiff's proposed amended complaint by reference, says that the Defendant Ward sustained an abrasion, swollen lips, and substantial pain; and that he was treated at a local area hospital. A person is guilty of assault in the second degree in New York State when, "[w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument." N.Y. PENAL LAW § 120.05-2. The Defendant Ward told the NCPD Defendants that the Plaintiff hit him with the weedwacker, and that the actions of the Plaintiff caused substantial pain, an abrasion and swelling.

Viewing the facts in the light most favorable to the Plaintiff and drawing all permissible inferences in his favor, the NCPD Defendants possessed probable cause. The weedwacker, used in the way that the Defendant Ward claimed, would constitute a dangerous instrument. "The term 'dangerous instrument' is defined in subdivision 13 of section 10 of the Penal Law as 'any instrument, article or substance which, under the circumstances in which it is used is readily capable of causing death or other serious physical injury." *People v. Carter*, 53 N.Y.2d 113, 116,

423 N.E.2d 30, 31 (N.Y. 1981) (holding that a pair of rubber boots constituted a dangerous instrument when the defendant used them to stomp on the plaintiff) (quoting N.Y. PENAL LAW § 10.00–13 (internal alterations omitted).

At the very least, the NCPD Defendants had probable cause to arrest the Plaintiff for assault in the third degree, which is a misdemeanor in New York State. *See* N.Y. PENAL LAW § 120.00-1 ("A person is guilty of assault in the third degree when: with intent to cause physical injury to another person, he causes such injury to such person . . . ."). The Defendant Ward told the police that a crime had been committed and that the Plaintiff had perpetrated that crime. The Plaintiff's own exhibits show that the Defendant Ward provided the NCPD Defendants with evidence purporting to prove that a crime had been committed. "Probable cause exists if a law enforcement officer receives information from a victim or eyewitness that warrants arrest, 'unless the circumstances raise doubt as to the person's veracity.'" *Hill v. Candres*, No. 15–cv–858, 2016 WL 7235800, at *2 (S.D.N.Y. Dec. 14, 2016) (quoting *Betts v. Shearman*, 751 F.3d 78, 82 (2d Cir. 2014)); *see also Adams v. Williams*, 407 U.S. 143, 146–47, 92 S. Ct. 1921, 1923, 32 L. Ed. 2d 612 (1972) (stating that the veracity of citizen complaints who are the victims of the very crime they report to the police is assumed for the purpose of evaluating probable cause); *Miloslavsky v. AES Eng'g Soc., Inc.*, 808 F. Supp. 351, 355 (S.D.N.Y. 1992), *aff'd*, 993 F.2d 1534 (2d Cir. 1993) ("It is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, who it seems reasonable to believe is telling the truth." (citing *Daniels v. United States,* 393 F.2d 359, 361 (D.C. Cir. 1968)).

Even though the Plaintiff had injuries as well, "[p]robable cause is not eliminated [] by the mere existence of evidence that could permit a conclusion of innocence." *Carpenter v. City of*

*N.Y.*, 984 F. Supp. 2d 255, 265 (S.D.N.Y. 2013). "[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Panetta v. Crowley*, 460 F.3d 388, 396 (2d Cir. 2006) (citation omitted). Here, the Plaintiff was suspected of wrongdoing, and the NCPD Defendants arrested him. In the Court's view, the NCPD Defendants had probable cause to arrest the Plaintiff.

Furthermore, the fact that the Plaintiff and the Defendant Ward presented conflicting stories to the NCPD Defendants does not negate probable cause. *See Wieder v. City of N. Y.*, 569 Fed. Appx. 28, 29 (2d Cir. 2014) ("Though there were conflicting accounts of the physical altercation, 'we have found probable cause where a police officer was presented with different stories from an alleged victim and the arrestee.'") (quoting *Curley v. Vill. of Suffern*, 268 F.3d 65, 70 (2d Cir. 2001)).

The Plaintiff supplied the Defendant Ward's hospital report and prior domestic incident reports. Namely, showing that he had suicidal ideations. While the Plaintiff does not argue that these facts should have affected the NCPD Defendants' view of the Defendant Ward's credibility, the Court examines the implications of those facts *sua sponte*. These exhibits suggest that the Defendant Ward had psychological issues. However, this does not necessarily affect the Court's holding. First, the complaint does not state or suggest that the NCPD Defendants had this knowledge when they arrived to answer the phone complaint. *See Betts v. Shearman*, 751 F.3d 78, 83 (2d Cir. 2014) (affirming the district court's dismissal of the plaintiff's claim because the officers had qualified immunity and stating that "[a complaining victim]'s past false accusations, however, do not undermine a finding of arguable probable cause because [the plaintiff] nowhere alleged that the officers knew of the prior accusations on the night [the plaintiff] was arrested")

(internal citations and quotations omitted); *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) ("When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it as probable cause does not require absolute certainty.") (emphasis in original) (internal citations and quotations omitted).

Second, and more importantly for these purposes, even if somehow the police knew about the Defendant Ward's alleged psychological issues, "knowledge of a victim witness's criminal or psychiatric history, alone, is not enough to destroy probable cause or strip officers of qualified immunity on the basis of arguable probable cause." *Escalera v. Lunn*, 361 F.3d 737, 746 (2d Cir. 2004) (citing *United States v. Canfield,* 212 F.3d 713, 720 (2d Cir. 2000) (criminal history); *United States v. Ferguson,* 758 F.2d 843, 849 (2d Cir. 1985) (psychiatric history)). Therefore, the NCPD Defendants had probable cause to arrest the Plaintiff, whether or not they knew about the Defendant Ward's psychological issues.

The Plaintiff states that the Defendant Ward's claims were false, but only presents conclusory allegations that the NCPD Defendants knew or should have known that they were false. Nevertheless, even if the Defendant Ward's allegations were actually false, "[p]robable cause can exist even where it is based on mistaken information, so long as the arresting officer acted reasonably and in good faith in relying on that information." *Bernard v. United States,* 25 F.3d 98, 102 (2d Cir. 1994) (citation omitted); *Dukes v. City of N. Y.,* 879 F. Supp. 335, 340 (S.D.N.Y. 1995). The Plaintiff does not allege that the NCPD Defendants did not act in good faith when they relied on the Defendant Ward's complaint.

Whether both the Plaintiff and Defendant Ward should have both been arrested is a different question, but it is clear from the Plaintiff's complaint and memorandum of law that NCPD Defendants had probable cause to arrest the Plaintiff.

Accordingly, the NCPD Defendant have a complete defense to the Plaintiff's Section 1983 claim because they had probable cause to arrest him, and the County Defendants' motion to dismiss the charges against the NCPD Defendants is granted. Therefore, all charges against the NCPD Defendants are dismissed.

## C.  As to the Plaintiff's *Monell* Claim Against the Defendant County

The Plaintiff argues that his *Monell* claim should survive because he has sufficiently alleged a "long sordid history of tolerance of nearly any police behavior . . . [including] allowing police [to] l[ie] about [the] factual probable cause to arrest."  (Pl.'s Mem. at 8).  The County Defendants state that the Plaintiff has not alleged sufficient facts to support an inference that the allegedly unconstitutional acts of the County Defendants were due to a policy or custom of the Defendant County.  The Court finds that the Plaintiff's *Monell* claim cannot survive because no individual acting under the color of state law committed a constitutional violation.

42 U.S.C. § 1983 provides, in relevant part, that "any person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, is liable to the injured party for damages."

To state a § 1983 claim, a plaintiff must allege: (1) that the challenged conduct was "committed by a person acting under color of state law"; and (2) that such conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).  Section 1983 does not create any independent substantive right, but rather is a vehicle to "redress . . . the deprivation of [federal] rights established

elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999); *see also Rosa R. v. Connelly*, 889 F.2d 435, 440 (2d Cir. 1989).

It is well-established that "a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691, 98 S. Ct. 2018, 2037, 56 L. Ed. 2d 611 (1978). However, section 1983 "extends liability to a municipal organization where . . . the policies or customs it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "Municipal liability may also be premised on a failure to train employees when inadequate training 'reflects deliberate indifference to . . . constitutional rights.' " *Okin v. Village of Cornwall–On–Hudson Police Dept.*, 577 F.3d 415, 440 (2d Cir. 2009) (quoting *City of Canton v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 1206, 103 L. Ed. 2d 412 (1989)).

To prevail on a Section 1983 claim against a municipality, a plaintiff must show "that 'action pursuant to official municipal policy' caused the alleged constitutional injury." *Cash v. Cty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting *Connick v. Thompson*, 563 U.S. 51, 60, 131 S. Ct. 1350, 1359, 179 L.Ed. 2d 417 (2011)); *see also Monell*, 436 U.S. at 690–91 ("[L]ocal governments . . . may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels.").

However, there first must be a constitutional violation in order to find a *Monell* violation. Here, as stated above, the Court has found that there is not a constitutional violation. The NCPD Defendants did not violate the Plaintiff's constitutional rights because they had probable cause to arrest him. Therefore, because the NCPD Defendants did not violate the Plaintiff's constitutional rights, the Plaintiff's *Monell* claim must be dismissed. *See City of Los Angeles v. Heller*, 475 U.S.

796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) ("[I]f [the police officer] inflicted no constitutional injury on respondent, it is inconceivable that [the city] could be liable to respondent."); *Fappiano v. City of New York*, —Fed. Appx.— 2016 WL 860255, at *5 (2d Cir. 2016) ("[Plaintiff's] failure to establish his claim against [defendant] forecloses his claim against the City of New York because in the absence of an underlying constitutional violation by a city employee there is no municipal liability under *Monell*."); *Howard v. City of N. Y.*, 602 F. App'x 545, 549–50 (2d Cir. 2015) (same); *Pinter v. City of N.Y.*, 448 F. App'x 99, 106 (2d Cir. 2011) ("[Plaintiff]'s *Monell* claims are derivative of his claims against the individual defendants, and therefore any claims dismissed as against the individual defendants must also be dismissed as against the City."); *Matican v. City of N. Y.,* 524 F.3d 151, 154 (2d Cir. 2008) (explaining that if there is no constitutional violation by a governmental actor, a city cannot be liable "regardless of whether the officers acted pursuant to a municipal policy or custom"); *Escalera,* 361 F.3d at 748–49 (granting summary judgment to the defendant county on the plaintiff's *Monell* claim "because each of the individual defendants had arguable probable cause, the County is likewise entitled to summary judgment in its favor."); *Radin v. City of N.Y.*, 14-cv-7347, 2016 WL 3982463, at *5 (E.D.N.Y. July 22, 2016) (granting defendants' motion to dismiss the plaintiff's *Monell* claim without addressing the sufficiency of the plaintiff's pleadings because "as a threshold matter, there can be no *Monell* liability without an underlying constitutional violation. I have already concluded that plaintiff was not falsely arrested. Therefore, because there is no underlying constitutional violation, there can be no *Monell* liability."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) (granting defendants' motion to dismiss because the officers had qualified immunity, and therefore because "there [was] no constitutional deprivation here, the City of New Rochelle cannot be held liable and the claim against it must be dismissed as well").

Even if the Court had found that mere arguable probable existed to arrest the Plaintiff and had only granted qualified immunity to the NCPD Defendants, the Plaintiff's *Monell* claim would still fail. The Plaintiff alleges that the Defendant County failed to train its officers to investigate cases and/or have acquiesced to widespread misconduct. In support of those allegations, the Plaintiff detailed the ten incidents listed above. As the Court mentioned above, only three of the cases listed by the Plaintiff relate to false arrest. Two of those police officers were prosecuted and one was disciplined. The remaining instances relate to various deeds of police misconduct wholly unrelated to arresting individuals without probable cause. Nevertheless, several of those officers were either prosecuted or disciplined.

The Court is unable to find that these isolated and unrelated incidents amount to either a failure to train or acquiescence to a practice that was so persistent and widespread as to constitute a custom or usage. *See generally Littlejohn v. City of N.Y.*, 795 F.3d 297, 315 (2d Cir. 2015); *see also Tieman v. City of Newburgh*, No. 13-cv-4178, 2015 WL 1379652, at *17–21 (S.D.N.Y. Mar. 26, 2015) ("Simply put, the fact that there were allegations of thirteen instances of excessive force during arrests over four years (none of which involved findings or admissions of culpability) during which hundreds, if not thousands, of arrests were made does not plausibly demonstrate that the use of excessive force during arrest was so frequent and pervasive to constitute a custom . . ." nor is it sufficient "to raise an inference of deliberate indifference due to failure to supervise."); *Walker v. City of N.Y.*, No. 12 CIV. 5902 PAC, 2014 WL 1259618, at *3 (S.D.N.Y. Mar. 18, 2014) (holding that the allegation that ten similar complaints were filed against New York City in the ten preceding years was insufficient to state a claim because the "number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a *Monell* claim");

*Collins v. City of New York,* 923 F.Supp.2d 462, 479 (E.D.N.Y. 2013) (holding that a "litany of other police-misconduct cases" discussed in the plaintiff's complaint "[were] insufficient to make a plausible case for *Monell* liability," because they either were different from the misconduct alleged in the complaint, or "involve[d] something less (settlements without admissions of liability and unproven allegations) than evidence of misconduct"); *accord Strauss v. City of Chicago,* 760 F.2d 765, 768–69 (7th Cir. 1985) (holding, even pre-*Twombly* and *Iqbal,* that allegations of complaints about similar conduct were insufficient to state a claim for a widespread custom under *Monell* because "the number of complaints filed, without more, indicates nothing," as "[p]eople may file a complaint for many reasons, or for no reason at all," and "[t]hat they filed complaints does not indicate that the policies that [the plaintiff] alleges exist do in fact exist"); *Xian Ming Wu v. City of New Bedford,* No. 12–cv–11648, 2013 WL 4858473, at *2 (D. Mass. Sept. 11, 2013) (holding that a complaint's reference to two other similar complaints is insufficient to survive a motion to dismiss).

Accordingly, the County Defendants' motion to dismiss the Plaintiff's *Monell* claim is granted. The additional facts supplied by the Plaintiff in his memorandum of law in support of his cross-motion to amend would not and do not cure the fact that there was not a constitutional violation and therefore there cannot be a *Monell* violation.

### III. CONCLUSION

Accordingly, the County Defendants' motion to dismiss the Plaintiff's Section 1983 claim against the NCPD Defendants and his *Monell* claim against the Defendant County pursuant to FED. R. CIV. P. 12(c) is granted. Therefore, all claims against the County Defendants are dismissed. The only Defendant remaining on the docket is Defendant Ward. The Plaintiff alleged a Section

1983 cause of action against the Defendant Ward, and the Court will therefore retain jurisdiction

over the case.


      It is **SO ORDERED:**

Dated: Central Islip, New York
       January 7, 2016

                                 */s/ Arthur D. Spatt*
                                   ARTHUR D. SPATT
                            United States District Judge